Bonnie MacNaughton (SBN 107402)
Max Hensley (*pro hac vice pending*)
Jordan Clark (*pro hac vice pending*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone:	(206) 622-3150
Facsimile:	(206) 757-7700
Email:	bonniemacnaughton@dwt.com
	maxhensley@dwt.com
	jordanclark@dwt.com

Eric Walters (SBN 151933)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:	(415) 276-6500
Facsimile:	(415) 276-6599
Email:	ericwalters@dwt.com

Attorneys for Plaintiff
MICROSOFT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>            Plaintiff,<br><br>      v.<br><br>FIFAVIP CO., LTD.; CHONGQING WANKE WEB LTD. CO.; JIANCHUN ZHANG; and DOES 1-20,<br><br>            Defendants. | Case No. 5:17-cv-2887<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

# I. INTRODUCTION

1. Defendants, through their websites futvip.com, mmovip.com, fifavip.net, fifavip.com, 4fut.com, neverwintervip.com, and acheterfifacoins.com (collectively, the "Websites") are engaged in the international trafficking of stolen Microsoft Account ("MSA") credentials, together with fraudulently obtained virtual gaming currencies for the Xbox video game console. These virtual gaming currencies are commonly referred to as "Points," "Coins," "Credits," or "Stored Value," among other things (collectively, "virtual gaming currencies").

2. In order to perpetrate their scheme, Defendants unlawfully obtain stolen MSA credentials and use those credentials to gain unauthorized access to MSAs and their linked credit cards. Defendants then fraudulently purchase virtual gaming currencies from Microsoft with the credit cards.

3. Using the Websites as a global internet sales platform, Defendants advertise and sell access to the compromised MSAs, together with the fraudulently obtained virtual gaming currencies.

4. In addition to the scheme described in the preceding paragraphs, Defendants also create and traffic in MSAs with fictitious identities which they register with stolen credit cards. Defendants use those MSAs to purchase virtual gaming currencies from Microsoft and sell access to the MSAs, together with the fraudulently obtained virtual gaming currencies, through the Websites.

5. In other instances, Defendants sell access to the MSAs through the Websites and instruct their customers to purchase virtual gaming currencies from Microsoft with the stolen credit cards linked to the accounts.

6. Defendants are reaping millions of dollars in illicit profits from their illegal enterprise.

7. Microsoft brings this action to: 1) protect its customers' MSAs and related payment instruments from Defendants' illegal activities; and 2) seek redress for the significant financial and other damages caused to Microsoft by Defendants' unlawful scheme.

8. Microsoft asserts claims against Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), Lanham Act, 15 U.S.C. § 1051 *et seq.*, and for common law unfair competition, fraud, conversion, and unjust enrichment.

## II.     PARTIES

9. Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Among other products and services, Microsoft has developed the Xbox video game platform.

10. Defendants are individuals and/or corporate entities who act in concert to own, operate, and/or otherwise control the Websites. On information and belief, Defendants are all citizens and/or residents of China.

11. Defendant FIFAVIP Co., Ltd. ("FIFAVIP") is the corporate entity which receives payments made on the websites.

12. Defendant ChongQing Wanke Web Ltd. Co ("ChongQing") is a corporate entity which, on information and belief, is affiliated with Defendant FIFAVIP.

13. Defendant Jianchun Zhang ("Zhang") is the Director of the Board and Manager of Defendant ChongQing and is the registrant listed for the websites acheterfifacoins.com and futvip.com.

14. The true identities of Does 1-20 are presently unknown to Microsoft. On information and belief, Does 1-20 aided, caused, directed, supervised, contributed to, conspired to commit, or otherwise furthered the unlawful conduct alleged herein.

15. On information and belief, each and all of the Defendants conspired with one another, personally participated in, and/or had the right and ability to supervise, direct, and control the unlawful conduct alleged herein, and derived a direct financial benefit from that unlawful conduct. Each and all of the Defendants are therefore subject to liability for the unlawful conduct alleged herein under the principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

### III.  JURISDICTION AND VENUE

16. The Court has subject matter jurisdiction over Microsoft's claims for violation of RICO, the CFAA, and the Lanham Act ("the Federal Claims") under 18 U.S.C. § 1964, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a).

17. The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because, on information and belief, this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

18. The Court has supplemental subject matter jurisdiction over the common law claims alleged herein pursuant to 18 U.S.C. § 1367(a) because those claims are so related to the Federal Claims that they form part of the same case or controversy.

19. The Court has personal jurisdiction over Defendants because they purposefully directed their unlawful and fraudulent activities in California, and Microsoft's claims arise from those activities.  As a routine and regular part of their business, Defendants sell and attempt to sell unauthorized access to MSAs and fraudulently obtained virtual gaming currencies to members of the general public in California, including in this District.  Additionally, Defendants entered into a contract in this District with PayPal Holdings, Inc. ("PayPal") for services Defendants uses as a routine and regular part of their business in furtherance of their scheme.  On information and belief, proceeds of Defendants' scheme are currently being held by PayPal for the benefit of Defendants in this District.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a) because Defendants are subject to personal jurisdiction in the Northern District of California.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Microsoft's claims in this suit occurred in the Northern District of California.

21. Pursuant to Local Civil Rule 3-2(e), intra-district assignment to the San Jose Division is proper because the claims arose in Santa Clara County, where certain of the injuries giving rise to the suit occurred, and where Defendants directed their unlawful conduct.

## IV. FACTS

22. Microsoft launched the Xbox video game console in 2001. It quickly became one of the most popular video game platforms in the world. Along with the original Xbox console (sold from 2001 to 2009), Microsoft created and sold two updated generations: the Xbox 360 (sold from 2005 to 2016), and the Xbox One (launched in 2013). Users of any of these consoles can play a wide range of Xbox games, which are developed and sold by Microsoft and third-party game developers. The most common way for an Xbox user to purchase Xbox games, whether developed by Microsoft or a third-party game developer, is on Microsoft.com, Microsoft's Windows 10 Store, or directly through the Xbox console.

23. In addition to selling the games themselves, Microsoft and third-party game developers sell various types of virtual gaming currencies, which allow users to enjoy their Xbox gaming experience with upgrades or other enhancements. Xbox users' virtual gaming currencies are deposited in their MSA where they are available to purchase a wide array of items associated with their Xbox games. MSAs and their deposited virtual gaming currencies are personal to the user and their transfer or sale to third parties is not permitted.

24. In late 2016, Microsoft investigators became aware that Defendants, through the Websites, were selling virtual gaming currencies for suspiciously low prices for the following popular Microsoft and third-party games, among others: Albion Online, ArcheAge, Astral Diamond, Blade and Soul, Devilian Gold, Dofus Touch Kamas, Elder Scrolls Online, ELOA (Elite Lord of Alliance), FIFA 14, FIFA 15, FIFA 16, FIFA 17, FIFA 18, FIFA Mobile, Final Fantasy XIV, Forza Horizon, King of Avalon, League of Legends, Madden NFL 16, Madden NFL 17, Madden NFL 18, NBA 2K16 MT, NBA 2K17 MT & VC, NBA 2K17 RP, NBA Live Mobile, Neverwinter, NFL 16, NHL 16, NHL 17, Overwatch, Pokemon Go, Revelation Online, STO Zen, Swtor Asia, Swtor EU, Tree of Savior Silver, Trove Flux, UFC 2, World of Warcraft EU, and World of Warcraft US.

25. Microsoft promptly undertook an investigation which included conducting multiple test purchases from the Websites. Specifically, from October 18, 2016, to February 21, 2017, Microsoft investigators made a series of nineteen test purchases of MSAs with virtual gaming

currencies from the Websites— three test purchases each from 4fut.com, acheterfifacoins.com, fifavip.com, fifavip.net , and futvip.com, and four from mmovip.com.

26. During these test purchases, Defendants sold the investigators access to hijacked MSAs with virtual gaming currencies fraudulently purchased with the authorized MSA holders' credit cards. Defendants also sold the investigators access to MSAs that they created with fictitious identities and registered with stolen credits cards. Defendants either used those credit cards to purchase virtual gaming currencies or instructed the investigators to purchase virtual gaming currencies with the stolen credit cards themselves. The payments for the nineteen test purchases were all made to Defendant FUTVIP's credit card merchant account. All of this was done without the knowledge or permission of Microsoft or its customers and with the intent to steal virtual gaming currencies for resale.

27. In addition to a common payment merchant account for the Websites, the emails sent to Microsoft's investigators from the Websites all originated from the domain futvip.com (such as mygameorder06@futvip.com, delivery04@futvip.com, delivery08@futvip.com), regardless of the website test purchased. Further, the Websites use identical templates bearing the identical or substantially similar language. This language includes the warning that the purchaser that "if there is any abnormal problems in the account during the process of using, please email us within 6 hours after you get the account, we are not responsible for any problems in more than 6 hours."

28. Microsoft's test purchases from the Websites demonstrate that Defendants are engaging in a systematic pattern and practice of unlawfully obtaining MSA credentials, using those credentials to fraudulently gain access to MSAs and the authorized MSA holders' linked credit cards, and then unlawfully purchasing virtual gaming currencies with those credit cards. On information and belief, Defendants are also creating MSAs under stolen or false identities and registering them with stolen credit cards which they then use to unlawfully purchase virtual gaming currencies. Defendants then sell access to the compromised and fraudulently created MSAs together with fraudulently obtained virtual gaming currencies over the internet.

29. As part of the "Microsoft Runs on Trust" commitment to its customers to provide a safer digital world, Microsoft has developed highly sophisticated fraud detection systems. In this case, these systems have successfully detected and prevented tens of thousands of attempts by Defendants to gain unauthorized access to MSAs in order to purchase virtual gaming currencies with the authorized MSA holders' credit cards or with stolen credit cards. However, despite these efforts, because Defendants unlawfully obtained account credentials previously compromised outside of Microsoft's systems and used those credentials to gain access to the MSAs, Defendants were able to complete nearly $2 million in fraudulent purchases of virtual gaming currencies. Microsoft has issued customer refunds or has received chargebacks from the credit card issuing banks for all of these unauthorized and fraudulent purchases.

30. Microsoft has duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including without limitation:

    a. "XBOX," Trademark Registration No. 2,663,880, for interactive video games devices.

    b. "XBOX 360," Trademark Registration No. 3,252,556, for interactive video game devices.

    c. "XBOX ONE," Trademark Registration No. 4,557,248, for video game software and consoles.

True and correct copies of the Trademark Registrations for (a) through (c) above are attached as Exhibits 1-3 to this Complaint.

31. These trademarks are used by Defendants on the Websites to further and facilitate the illegal marketing and sales activity described above.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Racketeer Influenced Corrupt Organization Act**
**(18 U.S.C. § 1961 *et seq.*)**

32. Plaintiff re-alleges each paragraph above as if fully set forth here.

33. Each individual Defendant constitutes a "person" within the meaning of 18 U.S.C. § 1961(3), as each is capable of holding a legal or beneficial interest in property.

34. Defendants collectively constitute an "Enterprise" within the meaning of 18 U.S.C. § 1961(4).

35. Defendants' enterprise engages in and affects interstate and foreign commerce, including through the hijacking of MSAs and theft of virtual gaming currencies, as set forth above. These transactions take place through the use of interstate telecommunication wires.

36. Defendants are each separate entities, distinct from the Enterprise itself and unlawfully use the Enterprise as a vehicle through which unlawful activity is being committed.

37. The common and shared purpose of the Enterprise is to 1) illegally obtain control over MSAs and associated payment methods (such as credit cards), use the authorized MSA holders' credit cards to purchase and load virtual gaming currencies on the MSA, and sell access to the hijacked MSAs and fraudulently obtained virtual gaming currencies to the public; and 2) create MSAs with fictitious identities, register the MSAs with stolen credit cards, and sell access to the fraudulently created MSAs and stolen credit cards to the public with instructions to use them to purchase virtual gaming currencies.

38. The Enterprise has an ongoing organization with a framework for making decisions, functions as a continuing unit, and has an ascertainable structure and system of authority guiding its operations, separate and apart from the pattern of racketeering in which the Enterprise is engaged.

39. Defendants each participates in the operation and management of the Enterprise and perpetrates particular racketeering acts in furtherance thereof.

40. The predicate acts which constitute the period of racketeering activity pursuant to 18 U.S.C. § 1961(5) are acts of wire fraud in violation of 18 U.S.C. § 1343, acts of transferring or transmitting stolen or fraudulently obtained property in violation of 18 U.S.C. § 2314, and acts of receiving, possessing, storing, selling, or disposing of stolen or fraudulently obtained property in violation of 18 U.S.C. § 2315. Each act involves Defendants and/or the Enterprise knowingly causing the use of wire communication to illegally obtain and/or exercise control over the MSAs

1  of other account holders, knowingly causing the use of wire communications to fraudulently and
2  illegally use those MSAs to obtain goods from Microsoft, and then knowingly causing the use of
3  wire communications to sell those goods to the public through the Websites.

4      41.    This period of racketeering activity began as early as March 26, 2015, and remains
5  ongoing.

6      42.    Defendants facilitates, engages in, and/or directs the pattern of racketeering with
7  knowledge of the fraudulent and illegal nature of the Enterprise's acts, and they operates the
8  Enterprise with the specific intent to deceive and defraud Microsoft, its customers, and the public
9  for Defendants' own financial gain.

10     43.    The pattern of racketeering affects interstate and foreign commerce, as it causes
11 harm to Microsoft, its customers, and the public, and impacts the legitimate sales and use of MSAs
12 and the Xbox platform.

13     44.    Defendants receive financial benefits from their operation of the Enterprise
14 including, but not limited to, millions of dollars in fraudulently obtained products from Microsoft
15 which the Enterprise sells through the Websites.

16     45.    Defendants have adopted the goal of the Enterprise by agreeing to facilitate acts
17 leading to the acts of wire fraud and/or engaging in overt acts to establish the pattern of
18 racketeering activity.

19     46.    As a direct and proximate result of Defendants' and the Enterprise's violations of
20 18 U.S.C. § 1962, Microsoft has been injured in its business and property in an amount to be
21 proven at trial.  Microsoft is entitled to treble these damages, and the costs of this suit, including
22 attorneys' fees, under 18 U.S.C. § 1964.

### SECOND CAUSE OF ACTION
### Violation of Computer Fraud and Abuse Act
### (18 U.S.C. § 1030)

25     47.    Plaintiff re-alleges each paragraph above as if fully set forth here.

26     48.    Defendants are intentionally accessing Microsoft's computer systems without
27 authorization, and are thereby obtaining information from Microsoft's computer systems.
28

49. Defendants, knowingly and with intent to defraud both Microsoft and its customers, are accessing Microsoft's computer systems without authorization, and by means of such conduct, are furthering the intended fraud by purchasing virtual gaming currencies with MSA holders' credit cards.

50. Defendants knowingly and with intent to defraud trafficked, and are continuing to traffic, in passwords and other similar information which permit access to Microsoft's computer systems without authorization.

51. Microsoft's computer systems, including its customer and sales databases, are used in and affect foreign and/or interstate commerce. Defendants' trafficking in passwords and other similar information affects interstate and/or foreign commerce.

52. As a result of the actions alleged above, Microsoft has suffered at least $5,000 in losses, including but not limited to amounts charged back to Microsoft by financial institutions as a result of fraudulent credit card activity on Microsoft.com, the loss of customer goodwill and harm to Microsoft's reputation as a result of Defendants' activities, the costs of identifying, assessing, and responding to those activities, including the costs of investigation and litigation, and the costs of remedying and/or restoring harm caused by Defendants' activities.

53. As a result of the activities alleged above, Microsoft is entitled to recover its economic damages including, without limitation, the damages and losses set forth above.

**THIRD CAUSE OF ACTION**
**Trademark Infringement**
**(15 U.S.C. § 1051 *et seq.*)**

54. Plaintiff re-alleges each paragraph above as if fully set forth here.

55. Defendants' activities constitute infringement of Microsoft's federally registered trademarks with the registration numbers listed above.

56. Microsoft advertises, markets, distributes, and licenses products under the trademarks described above and uses these trademarks to distinguish Microsoft's gaming products from the gaming products of others in the same or related fields.

57. Because of Microsoft's long, continuous, and exclusive use of these trademarks, they have come to mean, and are understood by customers, end users, and the public to signify, genuine, legal Xbox gaming products offered by Microsoft.

58. As described above, Defendants market, reproduce, and/or distribute fraudulently obtained products by using Microsoft's federally registered trademarks without authorization. This activity is likely to cause confusion, mistake, or deception as to the source, origin or authenticity of the Xbox gaming products being advertised.

59. Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the gaming products are marketed, reproduced, offered and distributed, originated with, or are authorized by Microsoft, thereby harming Microsoft, its licensees, and the public.

60. At a minimum, Defendants are acting with willful blindness to, or in reckless disregard of, Microsoft's registered marks.

61. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a) and (b).  Alternatively, Microsoft is entitled to statutory damages under 15 U.S.C. § 1117(c).

62. Microsoft is further entitled to injunctive relief.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's trademarks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the materials being advertised; and (d) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

## FOURTH CAUSE OF ACTION
### Fraud

63. Plaintiff re-alleges each paragraph above as if fully set forth here.

64. Each act of compromising a MSA belonging to a Microsoft customer and using that MSA and linked payment instrument to obtain virtual gaming currencies from Microsoft constituted an act of fraud.

65. In each use of a compromised MSA to obtain products from Microsoft, Defendants falsely represent the material facts that they are the authorized holder of the MSA and its linked credit card, with intent that Microsoft will act on that representation, and knowledge that that representation is false. Microsoft is unaware of that falsity, justifiably relies on the truth of the representation, and is being harmed as a result.

66. As a direct and proximate result of Defendants' acts of fraud, Microsoft was and continues to be injured in an amount to be proven at trial. Microsoft is entitled to recover these damages, and is further entitled to injunctive relief for the reasons set forth above.

## FIFTH CAUSE OF ACTION
### Conversion

67. Plaintiff re-alleges each paragraph above as if fully set forth here.

68. Each act of compromising an MSA belonging to a Microsoft customer and linked credit card to obtain virtual gaming currencies from Microsoft constitutes an act of conversion.

69. Defendants are willfully interfering with Microsoft's property and money, without lawful justification, depriving Microsoft of the possession of it.

70. This property and money is capable of being identified, as it was delivered in a series of identifiable transactions and was wrongfully obtained.

71. As a direct and proximate result of Defendants' acts of conversion, Microsoft was and continue to be injured in an amount to be proven at trial. Microsoft is entitled to recover these damages, and is further entitled to injunctive relief for the reasons set forth above.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

72. Plaintiff re-alleges each paragraph above as if fully set forth here.

73. Defendants have been unjustly enriched by the acts set forth above.

74. Defendants have received a benefit in Microsoft products and money, are aware of their receipt and value of that benefit, and have accepted and retained that benefit despite the knowledge that such acceptance or retention is inequitable.

75. Microsoft is entitled to return of those benefits in an amount to be proven at trial, and is further entitled to injunctive relief for the reasons set forth above.

## VI. PRAYER FOR RELIEF

WHEREFORE, Microsoft respectfully prays for the following relief:

76. That the Court enter judgment in Microsoft's favor on all claims;

77. That the Court restrain and enjoin Defendants, their directors, principals, officers, agents, representatives, employees, attorneys, successors, and assigns, and all others in active concert or participation with Defendants, from:

   a. making any infringing use of Microsoft's intellectual property, including but not limited to the intellectual property listed by the Trademark Registration Numbers above;

   b. displaying any intellectual property bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks, and/or service marks, including but not limited to the Trademark Numbers listed above;

   c. using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks or service marks, including but not limited to the Trademark Registration Numbers listed above, in connection with the distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any product not authorized by Microsoft;

   d. using any false or misleading representation that can or is likely to lead the trade or public or individuals erroneously to believe that any item has been distributed, offered for distribution, circulated, sold, offered for sale, imported,

12
COMPLAINT
Case No. 5:17-cv-2887

                advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is not true in fact;

    e.    engaging in any other activity constituting an infringement of any of Microsoft's trademarks and/or service marks, or of Microsoft's rights in, or right to use or to exploit, these trademarks and/or service marks;

    f.    distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any items fraudulently obtained from Microsoft; and

    g.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed above;

78. That the Court enter an order enjoining the display or operation of the Websites listed above until Defendants have established that no fraudulent activity or infringements on Microsoft's intellectual property are occurring thereon;

79. That the Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of Microsoft, the illegal profits obtained from their fraudulent purchase and distribution of virtual gaming currencies, and requiring Defendant to provide Microsoft a full and complete accounting of all amounts due and owing to Microsoft as a result of Defendants' unlawful activities;

80. That Defendants be required to pay all general, special, actual, and statutory damages which Microsoft has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced as provided for by 15 U.S.C. § 1117(b) and RCW 19.86.090;

81. That Defendants be required to pay to Microsoft both the costs of this action and the reasonable attorneys' fees incurred by Microsoft in prosecuting this action, as provided for by 15 U.S.C. § 1117 and RCW 19.86.090;

82. That Defendants be required to pay to Microsoft all damages and/or losses suffered as a consequence of Defendants' unlawful acts, as provided for by 18 U.S.C. § 1030; and

1   83.   That the Court grant Microsoft such other, further, and additional relief as the Court deems just and equitable.

DATED: May 19, 2017

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Bonnie E. MacNaughton*
   Bonnie E. MacNaughton (SBN 107402)
   Max Hensley (*pro hac vice pending*)
   Jordan Clark (*pro hac vice pending*)
   DAVIS WRIGHT TREMAINE LLP
   1201 Third Avenue, Suite 2200
   Seattle, Washington 98101-3045
   Telephone: (206) 622-3150
   Facsimile: (206) 757-7700

   Eric Walters (SBN 151933)
   DAVIS WRIGHT TREMAINE LLP
   505 Montgomery Street, Suite 800
   San Francisco, California 94111
   Telephone:   (415) 276-6500
   Facsimile:   (415) 276-6599
   Email:       ericwalters@dwt.com

Attorneys for Plaintiff
MICROSOFT CORPORATION